Ronald WILSON, Plaintiff,

v.

**HARIA AND GOGRI CORP. dba Jack–In–The–Box # 551; Opt Golden Hills Vac, LLC, Defendants.**

No. CIV.S–05–1239 LKK/DAD.

United States District Court,
E.D. California.

March 22, 2007.

Scottlynn J. Hubbard, IV, Mark Emmett, Law Office of Lynn Hubbard, Chico, CA, for Plaintiff.

Michael D. Murphy, Mohajerian Law Corporation, Los Angeles, CA, for Defendants.

## ORDER

KARLTON, Senior District Judge.

Plaintiff alleges that defendant violated the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act") by failing to remove architectural barriers at its restaurant. Pending before the court is plaintiff's motion for summary judgment. The court previously stayed the motion pending the potential resolution of a question of state law by the California Supreme Court.[1] This court now resolves the mat-

---

1. As discussed below, the California Supreme Court subsequently denied review of an intermediate appellate court decision that could have provided definitive guidance on whether plaintiffs must prove intentional disability dis-

ter based on the parties papers and after oral argument. For the reasons set forth below, the motion is granted.

## I. Facts[2]

Plaintiff Ronald Wilson is a 70 year old disabled man. Plaintiff suffers from severe idiopathic neuropathy, peripheral neuropathy ("silent disease") with symptoms of ALS (a.k.a. Lou Gehrig's disease), and motor-sensory neuropathy.[3] Decl. of Ronald Wilson ("Wilson Decl.") ¶ 3. Because of his condition, plaintiff experiences stiffness, muscle twitching, shaking, weakness, and spasms. *Id.* When traveling in public, plaintiff uses a cane, wheelchair, or both.[4] Plaintiff also owns a van with a spinner knob and has been issued a disability placard by the state of California.

Plaintiff regularly visits the defendant Haria and Gorgri Corporation's restaurant, a Jack-in-the-Box. He retained receipts to the restaurant from thirteen separate visits over 2005–2006. Wilson Decl. ¶ 11. In each of these visits, plaintiff alleges that there were several architectural barriers in place that prevented plaintiff from enjoying full and equal access to the goods and services at the restaurant.

There is no dispute that after commencement of the instant suit, at least some of these barriers were removed.[5] Plaintiff maintains, however, that there are six outstanding barriers that had yet to be remedied as of August 24, 2006. Wilson Decl. ¶ 16. Specifically, plaintiff identified the following six barriers: (1) the cut-out curb ramp had a slope of 8.8% at the top and 12.6% at the bottom; (2) the door to the men's restroom did not have a 12–inch strike side clearance on the push side, the door pressure was 12 pounds, and the door did not open to a full ninety degrees; (3) the toilet paper dispenser was 42 inches from the back wall; (4) the restroom handle/lock was not accessible; (5) none of the accessible seating in the restaurant was designated as accessible with signage; and (6) the disabled parking space lacked the words "No Parking" painted in the access aisle. *Id.*

With respect to at least two of the barriers, defendant claims that they have been remedied as of November 27, 2006 (the date that the declaration of Maheshkumar Gogri was executed). First, defendant contends that the words "no parking" are now painted in the access aisle of the disabled parking spot. Gogri Decl. ¶ 11. Second, defendant maintains that the toilet paper dispenser is now in compliance with all regulations. *Id.* However, plaintiff visited the restaurant on November 30, 2006 and took photographs that show that the dispenser is still 42 inches from the back wall. Wilson Decl. II, ¶ 3(c), Ex. E.

crimination under the Unruh Act to obtain damages.

2. All facts are undisputed unless otherwise noted.

3. At several points, defendant notes that the only evidence supporting plaintiff's factual allegations is his own declaration. This is, however, sufficient to meet plaintiff's initial burden on summary judgment, and as defendant repeatedly fails to tender any probative evidence in opposition, the court may appropriately treat these allegations as effectively undisputed.

4. Defendant notes that, on one occasion in 2006, the owner and operator of the restaurant allegedly observed plaintiff walking without the assistance of a cane or a wheelchair. Decl. of Maheshkumar Gogri ("Maheshkumar Decl.") ¶ 4.

5. Defendant does not dispute that these barriers were in existence at the time of plaintiff's visits but merely claims that they have since been remedied.

With respect to the issue of signage for accessible seating in the restaurant, defendant contends that the placards are often stolen, vandalized, or otherwise obscured by customers, and that it is the policy of the restaurant to replace the placards in such circumstances. *Id.* Accordingly, defendant states that if plaintiff observed the absence of required signage, it was because the placards were in the process of being replaced. *Id.* When plaintiff visited the restaurant on November 30, 2006, he found that the signage was still missing, and took photographs to document his observations. Wilson Decl. II, ¶ 3(f), Ex. F.

## II. Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 853 (9th Cir.1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.*, 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. 1348; *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575; *Rand v. Rowland*, 154 F.3d 952, 954 (9th Cir.1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Ass'n of Western Pulp and Paper*

*Workers,* 971 F.2d 347, 355 (9th Cir.1992) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Cline v. Indus. Maint. Eng'g & Contracting Co.,* 200 F.3d 1223, 1228 (9th Cir.1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank,* 391 U.S. at 290, 88 S.Ct. 1575; *see also T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *see also In re Citric Acid Litigation,* 191 F.3d 1090, 1093 (9th Cir.1999). The evidence of the opposing party is to be believed, *see Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* )). *See*

*also Headwaters Forest Def. v. County of Humboldt,* 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal. 1985), *aff'd,* 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

### III. Analysis

Plaintiff moves for summary judgment against defendant Haria and Gogri Corp, seeking damages under state law and injunctive relief under the ADA. With respect to damages, defendant argues that, in light of recent California case law, proof of intent to discriminate on the basis of disability is required for damages under section 52(a) of the Unruh Act. With respect to injunctive relief, defendant contends that the alleged violations have either been remedied or would cost too much to remedy, and that the alleged violations do not render the restaurant or its facilities inaccessible. For the reasons set forth below, plaintiff's motion is granted.

### A. ADA Claim

■ Title III of the ADA prohibits discrimination against people with disabilities in places of public accommodation. 42 U.S.C. § 12182(a). One form of such discrimination is the failure to remove architectural barriers. 42 U.S.C. § 12182(b)(2)(A)(iv). In order to prove discrimination stemming from an architec-

tural barrier, plaintiff must demonstrate that (1) he is disabled, (2) the facility in question is a place of public accommodation, (3) the facility contains an architectural barrier, (4) the plaintiff had actual knowledge of the architectural barrier precluding his full and equal access to the facility. 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv), 12188(a).

There is little dispute that most of these elements are present in the case at bar. First, given that plaintiff is unable to walk without the use of a mobility aid (e.g., wheelchair or cane), there is no genuine dispute that he is disabled within the meaning of the ADA.[6] *See* 42 U.S.C. § 12102(2)(A) (defining disability as a physical or mental impairment that substantially limits a major life activity). Second, a restaurant is a place of public accommodation. 42 U.S.C. § 12181(7)(B). Third, assuming the alleged architectural

barriers exist, plaintiff satisfies the requirement of actual knowledge, given that he personally encountered them during his multiple visits to the restaurant. Fourth, while defendant would ordinarily be entitled to prove that the removal of the alleged architectural barriers is not "readily achievable" (given that the facility was in existence prior to the passage of the ADA in 1993), the court holds that this is an affirmative defense, which defendant has waived.[7] Accordingly, the only remaining issue is whether the architectural barriers alleged by plaintiff were in place during his visits, and whether they continue to exist.

### 1. Cut–Out Curb Ramp

Defendant concedes that the slope of the cut-out curb ramp is in violation of ADAAG § 4.7.2 and 4.8.2.[8] Howev-

---

6. The fact that defendant asserts that plaintiff was observed walking without the aid of a cane or wheelchair on one occasion is not sufficient to create a genuine dispute regarding this issue. Gogri Decl. ¶ 11. Such an event would not negate the fact that plaintiff's numerous medical conditions nevertheless constitute a substantial limitation on his ability to walk. *See* 29 C.F.R. § 1630.2(j) (defining substantial limitation as either a total inability to perform major life activity *or* a significant restriction on the same).

7. The Ninth Circuit has yet to rule on this issue, but courts are generally in agreement that whether barrier removal is readily achievable is an affirmative defense. *See Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1002–03 (10th Cir.2001); *Gathright–Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1274 (11th Cir.2006). *See also Lentini v. Calif. Ctr. for the Arts*, 370 F.3d 837 (9th Cir.2004) (holding that whether an accommodation "fundamentally alters" a service or facility is an affirmative defense).

In *Colorado Cross*, the Tenth Circuit established a burden-shifting framework in which the plaintiff bears in the initial burden of production but the defendant bears the ulti-

mate burden of persuasion. 264 F.3d at 1002–03. The plaintiff must first suggest a method of barrier removal and proffer evidence that the method meets the statutory definition of readily achievable. *Id.* Thereafter, the burden shifts to the defendants to rebut that showing and prove that the suggested method is not readily achievable. *Id.*

Here, defendant has failed to plead that barrier removal is not readily achievable in its answer. Accordingly, the defense is waived. *Enlow v. Salem–Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 819 (9th Cir.2004). While plaintiff has not come forward with any evidence regarding barrier removal, he need not do so where such evidence would be unnecessary, given defendant's waiver. In contrast, the *Colorado Cross* court noted that the defendant in that case had properly pled that barrier removal was not readily achievable as an affirmative defense. *Id.*, n. 3.

8. Title III gives the Department of Justice authority to develop regulations implementing the requirements of the ADA. 42 U.S.C. § 12186(b). Pursuant to this authority, the Attorney General adopted the ADA Accessibility Guidelines ("ADAAGs") codified at 28 C.F.R. Pt. 36, Appendix A. *See Fortyune v. Am.*

er, it defends this noncompliance on two grounds. First, defendant states, without any accompanying evidence, that fixing the grade "would be several thousand dollars." Gogri Decl. ¶ 11(b). However, as noted above, defendant waived its ability to make this argument when it failed to plead that the barrier removal was not "readily achievable" as an affirmative defense. Second, defendant maintains that the degree of non-compliance is de minimis and did not render the restaurant inaccessible. The argument misapprehends the law. Ultimate access is not a defense under the ADA. *See Boemio v. Love's Rest.*, 954 F.Supp. 204, 208 (S.D.Cal.1997) ("The standard cannot be 'is access achievable in some manner'. We must focus on the equality of access. If a finding that ultimate access could have been achieved provided a defense, the spirit of the law would be defeated.").

### 2. Restroom Door

There is no genuine dispute that the men's restroom door is inaccessible in several respects. First, there is not a 12–inch strike side clearance on the push side of the door required by ADAAG § 4.13.6. Defendant claims that fixing this violation would cost $70,000 and that it does not render the restroom inaccessible. Both these arguments are unavailing, for the reasons noted above. Second, the door pressure required to open the door is 12 pounds, exceeding the 5 pound maximum allowed by ADAAG § 4.13.11. Defendant has no response to this contention and its accompanying evidence. Third, plaintiff presents evidence that the door-stop prevents the door from opening to a full 90 degrees. ADAAG § 4.13.5. Again, defendant fails to respond to this point.

### 3. Toilet Paper Dispenser

Plaintiff also provides evidence that the toilet paper dispenser is too far from the back wall. Specifically, it is 42 inches away, exceeding the maximum 36 inches allowed. ADAAG § 4.17.3; Fig. 30(d). Wilson Decl. II, ¶ 3(c), Ex. E. Defendant states that the dispenser was moved and was in compliance as of November 27, 2006. However, plaintiff visited the restaurant on November 30, 2006, and took pictures of the restroom, placing a measuring tape along the wall to document the distance from the back wall to the dispenser. There is no genuine dispute that the dispenser location is still in violation.

### 4. Interior Door Handle of Restroom Door

Plaintiff states that the inside door handle of the restroom door requires tight grasping, pinching, or twisting of the wrist to operate, in violation of ADAAG §§ 4.27.4 and 4.13.9. Defendant has no response to this, aside from stating that "It is impossible to comply with a Complaint like this since it is so unclear." Gogri Decl. ¶ 11(e). Having failed to produce any evidence, there is no genuine dispute that the door handle is in violation of ADAAG §§ 4.27.4 and 4.13.9.

### 5. Signage for Accessible Seating

Defendant concedes that the required signage is often absent, but claims that this is due to constant theft and vandalism. However, plaintiff's evidence indicates that as of November 30, 2006, after defendant's opposition was filed, the signage was absent, just as it was absent on each of plaintiff's previous visit. While the court must draw all reasonable inferences in favor of defendant, here, it would be unreasonable for the court to presume that the

*Multi–Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir.2004).

signage happens to have been stolen all thirteen times that plaintiff can document that he visited the restaurant. Accordingly, there is no genuine dispute that defendant has violated the relevant ADAAGs regarding required signage. ADAAG §§ 4.1.2(7), 4.1.16(3), 4.30.3.

### 6. "No Parking" Painted in Access Aisle

Plaintiff concedes that, at present time, defendant has remedied this problem. Accordingly, the motion with regard to this issue is moot.

In sum, the court finds that there is no genuine dispute that plaintiff has satisfied all the elements of his ADA claim with respect to all five of the outstanding architectural barriers described above that have yet to be removed. Accordingly, the motion for summary judgment for the ADA claim is granted.

### B. State Law Claims

■ Plaintiff also moves for summary judgment with respect to his state law cause of action under the Unruh Act and the Disabled Persons Act ("DPA"), and seeks damages under the former. Both statutes incorporate the ADA by reference. The Unruh Act was amended in 1992 to include the following language (now codified at Cal. Civ.Code § 51(f)): "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section." One critical difference between the ADA and the Unruh Act, however, is the available remedy. The Unruh Act provides for a minimum damages of $4,000 per violation, Cal. Civ.Code § 52(a), while the only remedy available under Title III of the ADA is injunctive relief, 42 U.S.C. § 12188(a)(1).

Under the ADA, damages are not recoverable. *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002).

■ Here, defendant argues that in order to obtain damages authorized by the Unruh Act, plaintiff must demonstrate that defendant had an intent to discriminate. The argument is premised upon a recent California intermediate appellate court decision, *Gunther v. Lin,* 144 Cal.App.4th 223, 50 Cal.Rptr.3d 317 (2006), which was decided after plaintiff's motion was filed.[9] Where the highest court of a state has not pronounced upon an issue of state law, as is the case here, a federal court sitting in diversity must use its own best judgment to predict how that court would decide the issue. *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980).

■ In conducting this analysis, a federal court looks to guidance from state appellate court opinions, well-reasoned decisions from other jurisdictions, and treatises. *U.S. v. Colin,* 314 F.3d 439, 443 (9th Cir.2002). Because a federal court must take into account "all available data," *Estrella v. Brandt,* 682 F.2d 814, 817 (9th Cir.1982), the decision of a California intermediate appellate court is not controlling. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986) (" '[D]ecisions by California Courts of Appeal are merely data' ") (quoting *Am. Sheet Metal, Inc. v. EM–KAY Eng'g Co.,* 478 F.Supp. 809, 813 (E.D.Cal.1979) (Karlton, J.)). Of course, such a decision "is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Estrella,* 682 F.2d at 817.

### 1. Prior Ninth Circuit Law

As a threshold matter, the court notes that the holding of *Gunther* directly con-

---

9. The California Supreme Court denied the petition for review on January 17, 2007.

tradicts that of *Lentini v. Calif. Ctr. for the Arts*, 370 F.3d 837 (9th Cir.2004). There, the Ninth Circuit held that because plaintiffs need not prove discriminatory intent under the ADA, plaintiffs also need not prove discriminatory intent under the Unruh Act, which imported ADA standards of liability. *Id.* at 847. This holding was in accord with the extant case law at the time, which also held that intent was not required. *See, e.g., Presta v. Peninsula Corridor Joint Powers*, 16 F.Supp.2d 1134, 1135 (N.D.Cal.1998) ("Because the Unruh Act has adopted the full expanse of the ADA, it must follow, that the same standards for liability apply under both Acts.").

 *Gunther*'s holding raises the issue for district courts as to whether they are bound by *Lentini* or are now obligated to reconsider the matter in light of the subsequent opinion by an intermediate court of the state. The state of the law is less than clear. In *In re Watts*, the Ninth Circuit held that an intervening decision by an intermediate court requires that court to reconsider a previous contrary opinion. *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002). This does not answer the question of whether a district court is free to disregard the Circuit's previous opinion, a ques-

tion which has divided courts around the country.[10] Happily, this court need not answer that question.[11] Whatever else is true, it is clear that federal courts are free to disregard the decisions of intermediate state courts where there is "convincing evidence" that the state's highest court would decide differently. *In re Watts*, 298 F.3d at 1083. Here, there is convincing evidence suggesting that the decision is not likely the law of the state of California.[12]

### 2. *Gunther*

In short, *Gunther* held what every other court before it has rejected: that proof of intent is required to collect damages for disability discrimination under the Unruh Act, which authorizes a minimum of $4,000 per violation. 50 Cal.Rptr.3d at 325; Cal. Civ.Code § 52(a). The court reached this conclusion by interpreting the 1992 legislation that amended the Unruh Act to include disability discrimination. Specifically, it found that this legislation did not overrule *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1172, 278 Cal. Rptr. 614, 805 P.2d 873 (1991), which, in rejecting a disparate impact theory of sex discrimination, noted that the statute's lan-

10. *Compare In re E & S Dists. Asbestos Litig.*, 772 F.Supp. 1380, 1391 (S.D.N.Y.1991), *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir.2003), *Aceto v. Zurich Ins. Co.*, 440 F.2d 1320,1322 (3rd Cir.1971), *and Nussbaum v. Mortgage Serv. America Co.*, 913 F.Supp. 1548, 1554 (S.D.Fla.1995) *with Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d. 1069, 1077–79 (7th Cir.2004).

11. The problem is particularly troublesome in California. I have previously noted the relative weakness of the doctrine of *stare decisis* in California jurisprudence. *See Froyd v. Cook*, 681 F.Supp. 669, 672 n. 9 (E.D.Cal. 1988). There, after examining the status of the doctrine within the state, I observed that a "federal district court need give no greater

weight to intermediate appellate decisions than the superior court of the state does." *Id.; see also Ortland v. County of Tehama*, 939 F.Supp. 1465, 1468 (E.D.Cal.1996). I am not aware of any change in California law bearing upon the issue.

12. This is so even though the California Supreme Court denied review in *Gunther*. Denial of review is "not [ ] without significance," but review may be denied for any number of reasons (including, for instance, the fact that there is not yet an appellate district split on an issue), and it does not necessarily signal the California Supreme Court's approval of a particular case. *DiGenova v. State Bd. of Educ.*, 57 Cal.2d 167, 178, 18 Cal.Rptr. 369, 367 P.2d 865 (1962).

guage (e.g., "denies," "aids or incites a denial," "make any discrimination," and "offense") appeared to cover only intentional discrimination. This language was not altered by the 1992 legislation.

Conceptually, then, *Gunther* envisions a two-step process for obtaining damages: first, the plaintiff must prove that the defendant engaged in discrimination, Cal. Civ.Code § 51, and second, that the discrimination was intentional, Cal. Civ.Code § 52. According to *Gunther*, the 1992 legislation altered the first step (by expanding the class of prohibited discrimination to include disability discrimination) but did nothing to alter the second step.

*Gunther's* reasoning is flawed from the outset. Its conclusion is premised on the view that the Unruh Act is comprised only of Section 51, but this divorces the law from its enforcement provision in Section 52. While *Gunther* notes that, by its own terms, the Unruh Act comprises only Section 51, the case that *Gunther* cites for this proposition goes on to say that courts "have consistently described as Unruh Civil Rights Act claims causes of action based under seemingly related provisions set forth in sections of the Civil Code that follow section 51." *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 756, 120 Cal. Rptr.2d 550 (2002). Indeed, even the *Harris* court referred to the Unruh Act as encompassing the enforcement provision found in Section 52. 52 Cal.3d at 1172, 278 Cal.Rptr. 614, 805 P.2d 873 (referring to Section 52 as "the language of the Act").[13] Accordingly, when the 1992 legislation made a violation of the ADA a per se violation of the Unruh Act, it also intended that these victims of disability discrimination would be entitled to the remedies afforded in the enforcement provision.

### a. Plain Meaning

■■ The traditional rules of statutory construction compel the same conclusion. The first step of statutory construction is to assign the "usual and ordinary meanings" to the words of a statute. *Wells v. One2One Learning Found.*, 39 Cal.4th 1164, 1170, 48 Cal.Rptr.3d 108, 141 P.3d 225 (2006). "If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." *Id.*

Here, the language of the 1992 legislation, codified in (now) Section 51(f), could not be clearer: "A violation of any right of any individual under the [ADA] shall also constitute a violation of this section." As noted above, "this section" refers to the Unruh Act, including its enforcement provision in Section 52. Every court to have considered the issue with the exception of *Gunther* has read Section 51(f) as not requiring proof of intent. *See, e.g., Lentini*, 370 F.3d at 847; *Presta*, 16 F.Supp.2d at 1136; *Hubbard v. Twin Oaks Health and Rehabilitation Ctr.*, 408 F.Supp.2d 923, 928–29 (2004) (Karlton, J.); *Boemio*, 954 F.Supp. at 208.

### b. Legislative History

The legislative history of Section 51(f) reveals an intent to include unintentional disability discrimination within the scope of the Unruh Act. The Assembly Committee on Judiciary report on AB 1077 (as amended January 2, 1992, p. 2) stated that the bill would: "Make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for damages)." The description in the Senate Committee on Judiciary report on

---

**13.** Furthermore, as discussed below, the legislative history to Section 51(f) also indicates

that the legislature viewed the Unruh Act as comprising both Sections 51 and 52.

AB 1077 (as amended June 1, 1992, p. 5) expressed a similar view.[14]

Also of particular significance is a letter from a labor law advisor for the California Chamber of Commerce to the bill's author which stated that the proposed bill would expose operators of places of public accommodations "to greater liability [than the ADA], even for unintentional violations of the new federal standard." *Gunther*, 50 Cal.Rptr.3d at 337 (quoting letter from Malanie Wiegner, Labor Law Advisor, California Chamber of Commerce, to Honorable Bruce Bronzan, dated June 1, 1992, at page 2).

*Gunther* sweeps this letter aside. The court argues that the Disabled Persons Act "does indeed [ ] allow for greater liability for the ADA than the ADA itself allows." *Id.* at 337. But, quite obviously, the legislature was voting on changes to the Unruh Act, not the DPA, and the letter was referring to the higher liability imposed by the former, not the latter. Of course, a lone letter is not controlling, but, as the only piece of legislative history to squarely address the issue of intent, it is nonetheless extremely relevant. And it is certainly more relevant than the inference *Gunther* attempts to draw from the "little opposition" that the bill drew from business groups. *Id.* at 337.

As the court in *Cross* recently noted in a post-*Gunther* decision, "the result under *Gunther* [ ] leaves a successful ADA plaintiff without a corresponding Unruh Act remedy [and] undermines the California

legislature's purpose in passing section 51(f) to provide that a violation of the ADA is also a violation of the Unruh Act." *Cross v. Pac. Coast Plaza Invs., L.P.,* 2007 WL 951772, *4, 2007 U.S. Dist. LEXIS 16138, *15 (S.D.Cal. Mar. 6, 2007). Like the court in *Cross,* this court also "presumes that the California legislature did not intend section 51(f) to be a law that is all bark and no bite." [15] *Id.,* 2007 WL 951772, **4–5, 2007 U.S. Dist. LEXIS 16138 at *15–16.

### c. Liberal Construction

■■■■ If the language of the Section 51(f) were ambiguous, and the legislative history unclear—which they are not—the California Supreme Court has also held that the Unruh Act must be interpreted "in the broadest sense reasonably possible" in order to "banish [discriminatory] practices from California's community life." *Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal.3d 72, 76, 219 Cal.Rptr. 150, 707 P.2d 212 (1985); *see also Presta,* 16 F.Supp.2d at 1136; *Burks v. Poppy Constr. Co.,* 57 Cal.2d 463, 468, 20 Cal. Rptr. 609, 370 P.2d 313 (1962). If this statement is to have any force beyond mere rhetoric, it must be applied to situations such as this one, where a court might construe a statute in two different ways, one narrow and one broad.

Moreover, liberal construction of the Unruh Act is needed to banish the discriminatory practices at issue here. As Judge Henderson recognized in *Presta,* disability discrimination is simply different than oth-

---

**14.** "[T]his bill would make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for damages, including punitive damages)."

**15.** The court in *Cross* ultimately declined to exercise supplemental jurisdiction over plaintiff's Unruh Act claims in the interests of

comity. Here, however, and in contrast to *Cross,* defendants have not filed a motion to dismiss the supplemental state law claims. Furthermore, the court finds that the issue of state law presented by the instant action is not particularly novel or complex in light of the overwhelming body of case law finding that proof of intent is not required.

er forms of discrimination. "Combating discrimination as it affects persons with disabilities requires recognizing ... that often the most damaging instances in which rights of persons with disabilities are denied come not as the result of malice or discriminatory intent, but rather from benevolent inaction when action is required." 16 F.Supp.2d at 1136. *See also Boemio,* 954 F.Supp. at 208 n. 4.

As discussed below, there is an obvious practical connection between the availability of the $4,000 damage minimum and the enforcement of the ADA. Second, injunctive relief was already available in 1992, when the Unruh Act was amended to include disability discrimination. Because of the "sweeping" coverage of California's Unfair Competition Law, *see Wilner v. Sunset Life Ins. Co.,* 78 Cal.App.4th 952, 964, 93 Cal.Rptr.2d 413 (2000), injunctive relief for ADA violations was already available under state law. Accordingly, if this court were to follow *Gunther,* it would nullify the 1992 legislation, and it is clear that courts may not conclude that the legislature engaged in an idle gesture. *Viking Pools v. Maloney,* 48 Cal.3d 602, 609, 257 Cal.Rptr. 320, 770 P.2d 732 (1989).

### d. Other Canons of Statutory Construction

*Gunther* also relies upon three canons of statutory construction: avoidance of statutory redundancy/nullification, the rule of reasonable construction, and legislative acquiescence. 50 Cal.Rptr. 4th at 327–33,

338–39. As explained below, the court finds that none of these canons alters the conclusion that the Unruh Act covers unintentional ADA violations.

### i. Avoiding Statutory Redundancy/Nullification

First, *Gunther* argues that if the Unruh Act were read to include unintentional ADA violations, it would nullify the DPA or render it redundant. The DPA has been interpreted to authorize damages of no less than $1,000 per violation, even where no intent to discriminate is shown. *See Donald v. Café Royale,* 218 Cal.App.3d 168, 177, 266 Cal.Rptr. 804 (1990). According to *Gunther,* "the two statutes [the Unruh Act and the DPA] dovetail nicely. Where there is intentional discrimination, there is a four times larger minimum penalty; if there isn't, plaintiff still recovers, but less." *Gunther,* 50 Cal.Rptr.3d at 331.

I cannot agree. The DPA and the Unruh Act are inevitably redundant in some respects, no matter how the court construes the latter.[16] *Gunther* characterizes the DPA as covering only unintentional discrimination, and the Unruh Act as covering only intentional discrimination, but such is not the case. Rather, the DPA authorizes damages for both intentional and unintentional discrimination, because intent is simply irrelevant under the statute. *See Café Royale,* 218 Cal.App.3d at 177, 266 Cal.Rptr. 804 ("Viewing the statute reasonably and in a commonsense

---

**16.** At the same time, it is not clear that the two prohibit the same class of conduct, and it is possible that the DPA prohibits a smaller category of discrimination tied to physical places. The Unruh Act entitles all individuals to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51. By contrast, the DPA's language is narrower. It provides disabled people "with the same right as the

general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics and physicians' offices, public facilities and other public places." Cal. Civ. Code § 54(a). Accordingly, it is an open question whether the DPA covers discrimination unconnected to a physical location, as in insurance discrimination, or discrimination on the internet.

fashion compels the conclusion that no intent element is set forth."). Accordingly, the portion of the DPA covering intentional discrimination is inevitably redundant with the portion of the Unruh Act covering intentional discrimination.[17]

### ii. Rule of Reasonable Construction

Second, *Gunther* argues that the rule of reasonable construction also points toward adopting its interpretation of the Unruh Act. *Id.* at 338. *See Copley Press, Inc. v. Superior Court,* 39 Cal.4th 1272, 1291, 48 Cal.Rptr.3d 183, 141 P.3d 288 ("To the extent [ ] examination of statutory language leaves uncertainty, it is appropriate to consider the consequences that will flow from a particular interpretation") (internal quotation marks omitted). *Gunther* argues that its interpretation is the more reasonable one for two reasons. First, it purportedly avoids redundancy, an issue addressed above. 50 Cal.Rptr.3d at 338. Second, it allegedly avoids the "gross abuses of the judicial system" that have been caused by an interpretation of the Unruh Act embracing monetary liability for unintentional ADA violations (e.g., the Ninth Circuit's holding in *Lentini* ). *Id.*

*Gunther* argues that ADA litigation has been spurred by the minimum $4,000 penalty for "unintentional technical violations of the ADAAGS" and cites with approval the lamentation of one district court that "[d]espite the important mission of the ADA, there are those individuals who would abuse its private cause of action provision by filing lawsuits solely with the intent to profit financially." *Id.* (internal quotation marks omitted).[18]

As an initial matter, the fact that the Unruh Act contains a damages provision that happens to provide an incentive for its enforcement hardly lends support for a claim that the law is being undermined. Because insufficient public resources have been invested in enforcing the law, and in educating the public about the ADA, this task has been left to private parties and their attorneys. It would be fundamentally unfair to, on the one hand, deny disabled people the benefit of public enforcement, while, on the other, deprive them of an incentive for their efforts at private enforcement.[19]

Furthermore, there is no basis in law for distinguishing between "real" violations of the ADA and merely unintentional "technical" violations of the ADA. A court cannot pick and choose which violations it deems serious enough to warrant relief under the Unruh Act. Presumably, no court would argue that placing a toilet paper dispenser too far for a disabled person to reach with ease—which is what the defendant in this case did—is merely a "technical" violation. The legislature has drawn clear lines with respect to what is legal and what is illegal, and it is not for a court to arbitrarily decide which violations are serious enough to warrant relief.

### iii. Legislative Acquiescence

Third, *Gunther* invokes the doctrine of legislative acquiescence in finding that the

---

**17.** Furthermore, as noted above, the *Gunther* court's interpretation also risks nullifying Section 51(f).

**18.** One cannot but help noting the pious recognition of the statute's salutary purpose before each deprivation of a benefit under the statute.

**19.** The court has already held elsewhere that the mere fact that a person has filed multiple lawsuits does not make him or her a vexatious litigant. *Wilson v. Pier 1 Imports (US), Inc.,* 411 F.Supp.2d 1196, 1200 (E.D.Cal.2006) ("[T]he number of lawsuits plaintiff has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law.").

legislature did not overrule *Harris. Gunther,* 50 Cal.Rptr.3d at 327. In short, it contends the California legislature is presumed to be aware of prior judicial constructions of statutes. While the presumption is not conclusive, *Harris,* 52 Cal.3d at 1156, 278 Cal.Rptr. 614, 805 P.2d 873, it is a factor to be considered. Here, *Gunther* argues that since the legislature amended the Unruh Act in 1992, but failed to change the language construed by *Harris* as requiring intent, the legislature approved of the court's judicial construction.

The doctrine of legislative acquiescence is of little assistance here. First, as noted above, the case law prior to *Gunther* has uniformly held that intent was not required to obtain damages for disability discrimination. If the legislature had acquiesced to anything, it was that body of case law spanning multiple years, not a few lines from *Harris.* Second, even if the court acquiesced to *Harris,* it is impossible to know which part they acquiesced to. *Harris* rejected a disparate impact theory of sex discrimination for multiple reasons, including, for example, the fact that there was no language or history to suggest that the legislature envisioned disparate impact as a viable claim, and that federal decisions at that time were in conflict as to the availability of that claim. 52 Cal.3d at 1172–73, 278 Cal.Rptr. 614, 805 P.2d 873.

Finally, *Gunther's* discussion of legislative acquiescence is circular. Application of the doctrine serves to reinforce *Gunther's* interpretation of the statute only if one accepts, as a starting point, that the text of the statute does not evince an intent to authorize damages for unintentional ADA violations. In other words, if one were to construe Section 51(f) as authorizing damages for unintentional ADA violations based on its language, as the courts did in *Lentini* and *Presta,* it would make no sense to say that the legislature acquiesced to a judicial construction entirely contrary to what it in fact intended.

■ In sum, the court concludes that a plaintiff may obtain damages under the Unruh Act for violations of the ADA even without a showing of intentional discrimination. In light of both the legislative history of the statute, and the directive to interpret the statute as broadly as possible to effectuate its purposes, the court finds that *Gunther* does not control. Accordingly, the relief requested is hereby granted, and plaintiff is entitled to $52,000 for defendant's thirteen violations of the Unruh Act.

## IV. Conclusion

The motion for summary judgment is granted as to the ADA claim and the Unruh Act claim.

IT IS SO ORDERED.