**NATIONAL FEDERATION OF the BLIND, the National Federation of the Blind of California, on behalf of their members, and Bruce F. Sexton, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**TARGET CORPORATION, Defendant.**

**No. C 06–1802 MHP.**

United States District Court,
N.D. California.

Oct. 2, 2007.

Rachel Elizabeth Brill, Joshua Geoffrey Konecky, Todd Michael Schneider, Schneider & Wallace, San Francisco, CA, Roger Norton Heller, Disability Rights Advocates, Oakland, CA, Daniel F. Goldstein, Mehgan Sidhu Capek, Brown Goldstein & Levy, LLP, Baltimore, MD, Laurence Wayne Paradis, Disability Rights Advocates, Berkeley, CA, Peter Blanck, Crouse–Hinds Hall, Syracuse, NY, for Plaintiffs.

Matthew Ian Kreeger, Harold J. McElhinny, Kristina Michelle Paszek, Attorney

at Law, Mary F. Hansbury Stuart Christopher Plunkett, Morrison & Foerster LLP, San Francisco, CA, Robert Allen Naeve, Morrison & Foerster LLP, Irvine, CA, David Frank McDowell, Michael James Bostrom, Morrison & Foerster LLP, Los Angeles, CA, for Defendant.

### MEMORANDUM & ORDER

### Re: Plaintiffs' Motion for Class Certification and Motion to Bifurcate; Defendant's Motion for Summary Judgment

MARILYN HALL PATEL, United States District Judge.

Plaintiffs National Federation of the Blind ("NFB"), National Federation of the Blind of California ("NFB–CA"), Bruce Sexton, and all those similarly situated, filed this action against Target Corporation ("Target"), seeking declaratory, injunctive and monetary relief. Plaintiffs claim that Target.com is inaccessible to the blind, and thereby violates federal and state laws prohibiting discrimination against the disabled. Now before the court is plaintiffs' motion for class certification and motion for bifurcation; defendant's motion for summary judgment and the parties' supplemental briefing on the state law claims. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

### BACKGROUND[1]

### I. Parties

Plaintiffs NFB and NFB–CA are nonprofit organizations. NFB is a nationwide organization with a 50,000 strong membership, composed primarily of blind individuals. NFB–CA is the California affiliate of NFB. The purpose of NFB is to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on terms of equality and (2) removing barriers and changing social attitudes, stereotypes and mistaken beliefs that sighted and blind persons hold concerning the limitations created by blindness and that result in the denial of opportunity to blind persons in virtually every sphere of life. These organizations have brought suit on their own behalf and on behalf of their members.

Plaintiff Sexton is a member of the NFB and the NFB of California. He is legally blind and uses JAWS screen reading software to access the internet. Sexton Apr. 12, 2006 Dec. ¶¶ 2, 13. Sexton relies on the internet for a variety of functions and frequently uses the internet in order to "research products, compare prices, and make decisions about purchasing goods in the stores' physical locations." *Id.* ¶ 16. He has attempted to use Target.com with his screen reader on "numerous occasions" but has been unable to access certain features of the website. *Id.* at ¶ 32.

Defendant Target operates approximately 1,400 retail stores nationwide, including 205 stores in California. Target.com is a website owned and operated by Target. By visiting Target.com, customers can purchase many of the items available in Target stores. Target.com also allows a customer to perform functions related to Target stores. For example, through Target.com, a customer can access information on store locations and hours, refill a prescription or order photo prints for pick-up at a store, and print coupons to redeem at a store.

### II. Background

Plaintiffs allege that Target.com is not accessible to blind individuals. According

---

**1.** Unless otherwise noted, background facts are taken from plaintiffs' First Amended Complaint ("FAC" or "Complaint").

to plaintiffs, designing a website to be accessible to the blind is technologically simple and not economically prohibitive. Protocols for designing an accessible internet site rely heavily on "alternative text": invisible code embedded beneath graphics. A blind individual can use screen reader software, which vocalizes the alternative text and describes the content of the webpage. Similarly, if the screen reader can read the navigation links, then a blind individual can navigate the site with a keyboard instead of a mouse. Plaintiffs allege that Target.com lacks these features that would enable the blind to use Target.com. Since the blind cannot use Target.com, they are denied full and equal access to Target stores, according to plaintiffs.

## III. *Procedural History*

On February 7, 2006 plaintiffs filed this action in Superior Court of California for the County of Alameda. On March 9, 2006 defendant removed the case to federal court and subsequently filed a motion to dismiss the complaint for failure to state a claim. In its motion, defendant claimed that each of the anti-discrimination laws protecting the disabled—the Americans with Disabilities Act, 42 U.S.C. section 12182, ("ADA"), Unruh Civil Rights Act, Cal. Civ.Code section 51 ("Unruh Act"), and the Disabled Persons Act, Cal. Civ. Code section 54.1 ("DPA")—cover access to physical spaces only. Since Target.com is not a physical space, defendant asserted that the complaint does not state a claim under these laws. On September 5, 2006 the court granted in part and denied in part defendant's motion to dismiss. The court reasoned that the inaccessibility of Target.com impeded full and equal enjoyment of goods and services offered in Target stores pursuant to the ADA. Thus, the court dismissed plaintiffs' claims to the extent that they are based on Target.com features that are unconnected to the stores. The court also denied the motion

to dismiss plaintiffs' state law claims. At the same time, the court denied plaintiffs' request for a preliminary injunction as premature.

Plaintiffs filed the instant motion for class certification on February 1, 2007. On March 8, 2007 defendant filed a motion for summary judgment on the grounds that plaintiff Sexton has not suffered a cognizable injury under the ADA. The court held an initial hearing on these matters on April 12, 2007. At the hearing, the court requested supplemental briefing on the reach of the relevant state statutes before ruling on the class certification motion as it related to the California subclass. Following the hearing, the court issued an order on the motion for class certification on April 25, 2007. In its order, the court narrowed the proposed class definition for the nationwide class to include the nexus requirement from its earlier order. Accordingly, the nationwide class consists of all legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores. Subsequently, the parties submitted supplemental briefing on whether the DPA and the Unruh Act apply to websites. Plaintiffs also submitted supplemental declarations of class members in accordance with the court's April 25, 2007 order. Both parties submitted additional briefing on the class certification issues.

## IV. *Recent Modifications to Target.com*

After the filing of the present complaint, Target undertook certain modifications of its website to make it more accessible to the blind. In response to this litigation, Target began drafting Online Assistive Technology Guidelines based on plaintiffs' expert report. Nemoir Dep. at 21:18–22:5.

## LEGAL STANDARD

### I. Motion for Class Certification

A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed.R.Civ.P. 23(a). In addition to satisfying these prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3). See Rule 23(b); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Rule 23(b)(2) permits class actions for declaratory or injunctive relief where the party opposing the class "has acted or refused to act on grounds generally applicable to the class." Rule 23(b)(2).

The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir.2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992). However, in adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. See Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The merits of the class members' substantive claims are generally irrelevant to this inquiry. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir.1983).

### II. Motion for Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be

viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all [claims] or any part thereof." Fed. R.Civ.P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

## DISCUSSION

### I. *Motion for Class Certification*

Plaintiffs seek certification of a nationwide class for claims arising under the Americans with Disabilities Act, 42 U.S.C. sections 12101 *et seq.* and a California subclass for violations of the Unruh Civil Rights Act, California Civil Code sections 51 *et seq.* and the Disabled Persons Act, California Civil Code sections 42 *et seq.* In its April 27, 2007 order the court defined the proposed nationwide class as follows:

> All legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores.

In that order, the court did not address the proposed class definition for the California sub-class. Plaintiffs have proposed the following definition for the sub-class:

> All legally blind individuals in California who have attempted to access Target.com, for plaintiffs' claims arising under the California Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.* and the Disabled Persons Act, California Civil Code §§ 54 *et seq.*

They ask the court to certify their claims for damages as well as injunctive relief under Rule 23(b)(2). Finally, they ask that Sexton be appointed as class representative and that Disability Rights Advocates, Schneider & Wallace, Brown, Goldstein, Levy, LLP, and Dr. Peter Blanck be appointed as class counsel. Before addressing the requirements for certifying a class under Rule 23, the court must first address a number of preliminary issues.

### A. *Jurisdictional Issues*

In various parts of its submissions, defendant raises both standing and mootness challenges to the proposed class action. Target argues that the organizational plaintiffs do not have standing to pursue the proposed class action. In addition, Target contends that certain accessibility modifications to the website have rendered plaintiffs' claims moot.

#### 1. *Standing*

NFB and NFB–CA are proper parties to the instant action. While not raising an explicit standing challenge, Target argues that these two organizational plaintiffs are not members of the putative class according to the proposed class definition, which includes only blind "individuals." However, NFB and NFB–CA are parties to the complaint individually as well as on behalf of their members. Lack of membership in the class does not defeat standing independent of a class nor can the court contemplate any reason why the exclusion of the organizational plaintiffs from the class definition is relevant.

Target further questions whether NFB and NFB–CA have demonstrated injury in their own right, presumably for the purposes of organizational standing. Def.'s Opp. at 5. Even if the organization has not suffered injury to itself, it may have standing to assert the rights of its members. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). There-

fore, these organizations need not prove injury to themselves.

 If an organization has not suffered injury to itself, it may have standing to assert the rights of its members if (1) its members would have standing to sue on their own; (2) the interests it seeks to protect are germane to its purpose; and (3) its claim and requested relief do not require participation by individual members. *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Plaintiffs have submitted declarations from members of both NFB and NFB–CA that demonstrate that their members meet the requirements of standing: injury-in-fact, causation, and redressability. *See, e.g.,* Sexton Dec. ¶ 33. Sexton is a member of both organizations. *Id.* ¶ 6–7. In his declaration, Sexton describes his thwarted attempts to use Target.com to browse for products found in the Target stores. *Id.* ¶ 33. He also describes his intention to use the website to search store-related weekly specials and other features of the website. *Id.* He states that he is unable to do so because of website accessibility barriers. *Id.* ¶ 32; *see also* Jacobson Dec. ¶ 20. For the purposes of the injury-in-fact requirement, Sexton has demonstrated that he faces a concrete and particularized injury that is not conjectural. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The accessibility barriers—lack of alt tags, keyboard accessibility, and headers—are traceable to the conduct of the defendant. Moreover, Sexton's claims can be redressed by the equitable relief sought. *Id.* The court concludes that Sexton has satisfied the Article III standing requirements, and, therefore, NFB and NFB–CA may properly base their representational standing claim on Sexton's standing.

 Moreover, the instant action and requested relief is germane to the organizational plaintiffs' purposes in protecting the interests of the blind. FAC ¶¶ 8–9. Finally, these two plaintiffs seek injunctive relief, which would not require the participation of individual members. The court, therefore, finds that NFB and NFB–CA have standing as representatives of their members to pursue their claims for injunctive relief both independently and as part of the class and subclass alleged.

Target argues that the two organizational plaintiffs do not have standing to pursue damages on behalf of the California subclass. Certainly, it is unlikely, if not impossible, that organizational plaintiffs would have standing to pursue damages claims because the form of relief necessarily requires the participation of the individual members. *See Bano v. Union Carbide Corp.,* 361 F.3d 696, 714 (2d Cir.2004) (observing that no federal appellate body had held that an "association has standing to pursue damages claims on behalf of its members"). However, the court need not reach this issue because Sexton has standing to pursue damages claims on behalf of the California subclass. The parties do not dispute that the organizational plaintiffs have standing to pursue the equitable relief sought by them independently and for the class.

### 2. *Mootness*

 Target points to several accessibility improvements on its website, which it made subsequent to the filing of the instant complaint, to argue that plaintiffs' claims are moot.[2] In response to the ac-

---

**2.** Target raises this issue in the context of arguing that the timing of the improvements to the website complicate individual damages calculations, without explicitly raising a mootness challenge. However, the court considers it prudent to address any potential jurisdictional issues.

cessibility report of plaintiffs' expert, Target has made certain modifications to its website. Indeed, plaintiffs' expert concedes that the modifications have increased accessibility for the blind. *See* Thatcher July 7, 2006 Dec. ¶ 3 (remarking that the changes at Target.com have made it "more likely that a blind user could complete a transaction"). Target does not assert that all of plaintiffs' accessibility claims have been addressed by the recent modifications, and even the most favorable understanding of these modifications would suggest that only one aspect of the claims has been fully addressed: keyboard accessibility. Moreover, the continuous addition of new pages to Target.com argues against a mootness finding. Aside from the incompleteness of the modifications and the potential for new pages, it is well-settled law that "voluntary cessation of allegedly illegal conduct ... does not make the case moot." *DeFunis v. Odegaard,* 416 U.S. 312, 318, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (citation and quotation omitted). Therefore, the court rejects the argument that the post-filing modifications to Target.com render plaintiffs' claims moot.

### B. *Proposed Class Definitions*

Target argues that two deficiencies in the proposed class definitions militate against certification. First, it argues that the proposed definitions are overbroad, because they include claims that the court dismissed in its previous order. Second, it contends that the proposed definitions are not adequately defined or ascertainable. Having addressed both issues in its previous class certification order, the court need not consider those here.

### C. *Supplemental Declarations*

Target contends that plaintiffs' efforts to certify a class must fail because all of the putative class member declarants were able to access the goods and services of Target stores. The court has examined each of the thirty-four supplemental declarations submitted by plaintiffs in response to the court's previous class certification order.

Styled as a challenge to class certification, Target's argument addresses the merits of whether plaintiffs have suffered an injury under the ADA's requirement of "full and equal enjoyment of the goods [and] services ... of any place of public accommodation." 42 U.S.C. § 12182(a). This dispute is dangerously close to asking the court to make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Alternatively, Target's position sounds as a standing challenge. Neither view is persuasive.

■ A preliminary inquiry into the merits of plaintiffs' claims at the class certification stage is inappropriate. *Id.* The court may only scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class-wide basis. *See, e.g., Moore v. Hughes Helicopters, Inc.* 708 F.2d 475, 480 (9th Cir.1983). This inquiry requires the court to accept the substantive allegations contained in plaintiffs' complaint as true and analyze only whether the asserted claims or defenses are susceptible of resolution on a class-wide basis. *See McCarthy v. Kleindienst,* 741 F.2d 1406, 1419 n. 8 (D.C.Cir. 1984). Target asks the court to determine which of plaintiffs' alleged injuries constitute a denial of access to the stores for the purposes of the ADA; in essence, this would require the court to make a liability determination at this stage. The court declines to decide, at the class certification stage, which of the declarants' purported injuries constitute violations of the ADA.

Those questions reach the ultimate merits of this action.

■ Rather, the court has reviewed each of the supplementary declarations to determine whether the putative class members meet the class definition. The court is satisfied that many of the putative class members have alleged that they were denied access to the enjoyment of goods and services offered in Target stores as a result of their inability to access Target.com. The declarations present two types of alleged access problems: diverted purchases and in-store barriers.

Some of the putative class members were deterred from going to Target stores after their experiences with the website. *See, e.g.,* Williamson Dec. ¶ 17 ("I was not able to locate any products or access any product descriptions.... I gave up ... and ended up finding the video game I was looking for on Wal–Mart's website and purchased the game from our local Wal–Mart store"); Carranza Dec. ¶ 12 ("I tried, without success, to use Target's website before shopping at my local Target store.... The layout of the website was extremely confusing and large portions of information appeared to be missing. So, I went to [another] store's website instead. I easily selected a gift from that store's online registry and a friend of mine purchased it from the local store."). Target dismisses these diverted purchases as speculative, depending on a number of unsubstantiated assumptions about the availability of products in the stores. Certainly, products listed on a gift registry, like the one Ms. Carranza attempted to access, are expected to be available in the stores; her diverted purchase was not based solely on speculation. *See* Carranza Dec. ¶ 12. Moreover, Target's argument based on the speculative purchases would defeat most ADA claims. There is no requirement that a plaintiff who encounters physical accessibility barriers—such as a wheel-chair user who confronts a store without ramps at its entrance—must provide a shopping list of products available at the store in order to proceed with an ADA claim. Rather, it is sufficient that the putative class members have alleged that they were denied access, by being diverted to another store, in order to meet the class definition. Again, this showing does not establish that any of the alleged injuries were, in fact, a denial of access under the ADA.

To put to rest any latent standing challenges on the basis of the declarations presented, the court notes that putative class members who have been deterred from shopping at Target altogether have standing to proceed on their ADA claims. *Pickern v. Holiday Quality Foods Inc.* suggests that for the purposes of standing, class members need not have engaged in a "futile gesture" to gain access to the store when they knew that it would likely be inaccessible. 293 F.3d 1133, 1135 (9th Cir. 2002) ("We hold that when a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury during the limitations period."). Therefore, those declarants who have described specific incidents in which they were diverted to another store by virtue of the inaccessibility of Target.com have met the class definition.

A second set of declarants describe the increased time and expense incurred during in-store shopping as a result of the inaccessibility of the website. Their inability to pre-shop on the website required declarants to hire an aide or ask a friend or family member to accompany them. *See, e.g.,* Marks Dec. ¶ 12; Booth Dec. ¶ 12. Guided shopping trips took longer

as a result of the inability to review products online in advance. Booth Dec. ¶ 12. Other declarants resorted to in-store help when they could not access the website. For example, Charlotte Czarnecki described her experience with seeking assistance with a gift registry after being unable to access it online:

> I went to the physical Target store and asked a store clerk to print out the registry and read it to me. The list was very long with many categories. I felt uncomfortable because the store clerk seemed reluctant to read the entire list to me aloud and provide the level of detail I needed to decide what to buy.... In the end, I made a rash decision about what to buy and purchased the gift before I left the store.

Czarnecki Dec. ¶ 8. Plaintiffs characterize these as a dignitary injury in which a "blind shopper must check her independence at the door." Pls.' Class Cert. Suppl. at 5. Certainly, forced reliance on other people is injurious in many respects. Again, Target responds that none of these declarants were absolutely prohibited from entering the Target stores and making purchases as a result of the website's inaccessibility. According to Target, these shoppers merely experienced inconvenience. Target contends that equal convenience is not required by ADA; therefore, the fact that putative class members spent more time to accomplish the same tasks as sighted persons and required assistance from in-store personnel or guides does not render the stores inaccessible. Like its argument that deterrence does not constitute inaccessibility, this argument, too, is overbroad. A wheelchair user is not prohibited from entering a store without a ramp: that person could be carried into the store by the store personnel or hire a guide to do so. Nevertheless, those accessibility barriers, even where they may be accommodated, would generally violate the ADA. Similarly, the increased cost and time to surmount the alleged barriers presented by the inability to pre-shop demonstrate that these declarants have met the class definition. Target's reliance upon their ability to accommodate blind shoppers through other means, such as in-store assistance or a 1–800 customer service number is misplaced at this stage. As the court noted at the outset of this litigation, the method of accommodation is an affirmative defense. Order of September 5, 2006 at 11 ("[T]he flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate basis upon which to dismiss the action."). Whether Target's proffered accommodations are reasonable is an inquiry better left to later stages of the litigation.

The declarations do not suffer from the defects described in the court's previous order on class certification. *See* April 25, 2007 Order at 7 ("Despite the statements indicating that they may have been deterred from purchasing products at Target stores, the declarations make clear that these are individuals who would prefer to shop online. They consistently express the declarants' desire to shop on the Target.com website."). The declarants each describe how they use the Target.com website in connection with their visits to the store. *See, e.g.,* Kresmer Dec. ¶ 7 ("I visit store websites in connection with in-store shopping at least twice a month."); Servan Dec. ¶ 7 ("I also use the internet to access gift registries, but ... I tend to buy the items at the stores themselves rather than order on the internet."). The declarations suggest that pre-shopping is an important aspect of in-store accessibility for blind shoppers. *See* Kresmer Dec. ¶ 9 (noting that the newly-blind are taught to use the "internet in conjunction with in-store shopping"). Significantly, each of the putative class members has described specific incidents within the recent past in which the inaccessibility of the website has

prevented them from enjoying the goods and services available at Target stores. *See e.g.,* Frye Dec. ¶ 9 (describing such an incident "last Christmas"); Booth Dec. ¶ 11–12 (an incident "last fall"). The boilerplate "recitation of [a] future desire" to visit the stores is no longer the only allegation of a nexus to the stores. April 25, 2007 Order at 8. The court is satisfied that, for the sole purpose of class certification, the declarants have established that they meet the class definition.

### D. *State law claims*

As an initial matter, the parties dispute whether the class definition for the proposed California subclass must contain a similar nexus requirement. Defendant also asserts that certification of a California subclass for either the Unruh or the DPA claims is improper. The court will consider each of these arguments in turn.

Target contends that the Unruh Act and DPA claims must be dependent on an alleged ADA violation because neither statute would apply to Target.com independent of an alleged ADA violation. In its September 5, 2006 order, the court noted that a violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA. Cal. Civ.Code §§ 51(f), 54.l(d); Sept. 5, 2006 Order at 12–13. That order did not address whether the nexus requirement was applicable to the Unruh and DPA claims independent of plaintiffs' ADA claims. The court did not impose the nexus requirement for state law claims; it merely noted that a violation of the ADA was ipso facto a violation of the two state statutes at issue. Sept. 5, 2006 Order at 12–13. Indeed, the court observed that Target.com likely met the definition of a service of a business establishment under section 51(b) of the Unruh Act. *Id.*

Plaintiffs present persuasive authority to demonstrate that the Unruh Act and the DPA do not require a nexus to the retail stores. First, neither statute is limited to restrictions on access to a place of public accommodation in the same way as the ADA is limited. 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...."); *see Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir.2000) (concluding that, for the purposes of the ADA, "places of public accommodation" is limited to actual, physical spaces). The Unruh Act regulates "all business establishments of every kind whatsoever." Cal Civ.Code § 51(b). The DPA addresses "an accommodation, advantage, facility, and privilege of a place of public accommodation" and "other places to which the general public is invited." *Id.* § 54.1(a)(1). Thus, the language of both statutes is broader than that of the ADA.

■ What the court alluded to in its previous order, it will now hold explicitly for the purposes of class certification: the Unruh Act and the DPA reach Target.com as a kind of business establishment and an accommodation, advantage, facility, and privilege of a place of public accommodation, respectively. No nexus to the physical stores need be shown.

### 1. *Unruh Act*

The Unruh Act, California Civil Code section 51, *et seq.* states that

> (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or

services in all business establishments of every kind whatsoever.

The statutory text is not susceptible to the limited construction that the Ninth Circuit has placed on the ADA. *Weyer*, 198 F.3d at 1114 (9th Cir.2000). In its 1959 amendments to the Unruh Act, the California legislature eliminated the list of physical places contained in the Act and replaced it with the reference to "all business establishments of every kind whatsoever." *Warfield v. Peninsula Golf & Country Club*, 10 Cal.4th 594, 618, 42 Cal.Rptr.2d 50, 896 P.2d 776 (1995) (discussing 1959 amendments to the Unruh Act); *Gardner v. Vic Tanny Compton, Inc.*, 182 Cal. App.2d 506, 512, 6 Cal.Rptr. 490 (1960) (describing interpretation of previous statutory language limiting Unruh Act to "all other places"). By contrast, the California Supreme Court has read the relevant language of the Unruh Act to the broadest extent possible: "the word 'establishment,' as broadly defined, includes not only a fixed location ... but also a permanent 'commercial force or organization.'" *O'Connor v. Village Green Owners Ass'n*, 33 Cal.3d 790, 795, 191 Cal.Rptr. 320, 662 P.2d 427 (1983). In its most recent amendments to the Unruh Act, the legislature made a specific finding expressing its support for the expansive construction in *O'Connor. See* Cal. Civ.Code. § 51, Historical Notes–Historical and Statutory Notes ("It is the intent of the Legislature that the amendments made to the Unruh Civil Rights Act by this act do not affect the California Supreme Court's rulings in [*Marina Point*] and [*O'Connor*]."). Indeed, one federal district has recently construed the term "business establishment" to include an exclusively internet-based adoption agency. *Butler v. Adoption Media, LLC*, 486 F.Supp.2d 1022, 1054 (N.D.Cal.2007) (Hamilton, J.). In that case, the plaintiffs alleged that the website's refusal to offer same-sex domestic partners the adoption-related services on

the same terms and conditions offered married couples, violated the Unruh Act. None of these cases restrict the applicability of the Unruh Act in the same way as the ADA; imposing a nexus requirement on the class definition for the California subclass is, therefore, not necessary.

In its supplemental briefing, Target does not appear to dispute that the Unruh Act applies to websites. Rather, it argues that the Unruh Act requires an individualized showing of discriminatory intent and that such a showing necessarily defeats class certification. Under this theory, plaintiffs cannot meet the predominance showing required by Rule 23(b)(3). *See Rutstein v. Avis Rent–A–Car Systems, Inc.*, 211 F.3d 1228, 1235 (11th Cir.2000) (concluding that putative class action requiring a showing of intentional discrimination could not meet the predominance requirement). Target also contends that the damages claims would require individualized determinations unsuitable for a class action. In similar contexts, district courts have certified class actions alleging disability discrimination under the Unruh Act. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 613 (N.D.Cal.2004) (Jenkins, J.) (certifying class under Rule 23(b)(2) for ADA and Unruh Act claims brought by wheelchair users against restaurant); *Arnold*, 158 F.R.D. at 461–62 (certifying similar class under Rule 23(b)(2)); *Berlowitz v. Nob Hill Masonic Management*, No. C–96–01241 MHP, 1996 WL 724776 (N.D.Cal. Dec. 6, 1996) (Patel, J.) (same). In each of these cases as in the present one, the class members did not challenge individual actions by the defendant against each member of the class but the same actions taken by defendant. *Moeller*, 220 F.R.D. at 613. The intent requirement, if one exists, of the Unruh Act does not render class certification inappropriate.

Target also argues that the Unruh Act bars claims that require modification of the sort sought by plaintiffs claims for injunctive relief. *See* Cal. Civ.Code 51(d) ("Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure...."). This argument, even if it is correct, is not relevant to the instant motion for class certification.

### 2. *DPA*

The DPA guarantees that individuals with disabilities

> shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Cal. Civ.Code § 54.1(a)(1). The parties dispute whether the language "and other places to which the general public is invited" includes websites such as Target.com. *Id.* The text itself is silent on the issue, but it is notably broader than the ADA. *Com-*

*pare id. with* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation."). The enumeration of the public places in the DPA includes such things as "telephone facilities," defined by the Act as "tariff items and other equipment and services." Cal. Civ.Code § 54.1(a)(2). The logic of *Weyer* in limiting the ADA to physical places relied upon the canon of *noscitur a sociis:*

> Title III provides an extensive list of "public accommodations" in § 12181(7), including such a wide variety of things as an inn, a restaurant, a theater, an auditorium, a bakery, a laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium. All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services.

198 F.3d at 1114. Fidelity to this principle of statutory construction would suggest the opposite conclusion for the DPA: because the DPA enumerates both physical places and non-physical places, the phrase "other places to which the general public is invited" cannot be limited solely to physical places. Furthermore, among the "places" enumerated in the DPA is entitlement to "advantages," which clearly is not affixed to any particular physical location.

While there are no cases applying the DPA to websites, there is no case law to suggest that the legislature intended to exclude websites from the coverage of the DPA. Indeed, the broad language of the DPA comfortably encompasses websites as "places to which the general public is invit-

ed." Recent amendments to the statute reaffirm that the statutory language was intended to be read liberally. In enacting the 1992 amendments to the statute, the legislature noted its intent "to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990, and to retain California law when it provides more protection for individuals with disabilities ...." 1992 Cal. Stats. 4282. In drafting such broad language, the legislature was likely aware that it was ensnaring websites.

In sum, the court concludes that imposing a nexus requirement on the definition of the subclass would be inappropriate at this stage. Therefore, the court finds that the proposed California subclass definition is appropriate.

## II. Rule 23(a) Requirements

As noted above, a party seeking class certification must establish that the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met. The court addresses each of these requirements below.

### A. Numerosity

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement. See 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed.2004). Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement. See Freedman v. Louisiana–Pac. Corp., 922 F.Supp. 377, 398 (D.Or. 1996); 7 Charles A. Wright, Arthur R.

Miller, & Mary Kay Kane, Federal Practice and Procedure § 1762 (3d ed.1995).

Plaintiffs have submitted evidence, based on U.S. Census data, that there are likely thousands of potential class members in the nationwide class based on the large number of people who are legally blind and use screen access software. See Brome Dec. ¶ 4. Similarly, they estimate that there are approximately 140,000 blind individuals in California. Id. They further contend that 10,000 blind people in California use screen access software to access the internet. Taylor Dec. ¶ 4. Target responds that plaintiffs have not met their burden on this element: they have not presented any evidence of the number of blind individuals who use the internet and more specifically those who have attempted to access Target.com. However, defendant seeks to impose a level of specificity not required by Rule 23(a). Courts, including this one, have repeatedly certified ADA classes like the one proposed here based on similar evidentiary showings. In Lieber v. Macy's Cal., Inc., No. C 96–2955 MHP, Order re: Class Certification, at 5 (N.D.Cal. Mar. 9, 1998), this court found the numerosity requirement satisfied based on census data and statistical evidence indicating that there were thousands of wheelchair users and persons with other mobility disabilities living in the Bay Area. In that action, like the present one, the class definition included persons with certain specific mobility disabilities who had been denied access to one of defendants' stores. Id. The court required no evidence that a sufficiently numerous subset of mobility impaired persons had been denied access to the stores, because no such evidence was required by the dictates of Rule 23. Indeed, in cases, like those involving alleged violations of the ADA, where the alleged violations may have deterred putative class members from attempting to ac-

cess stores, the type of evidence defendant seeks may be unavailable, if not impossible, to obtain. The court in *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D.Cal.1994) (Henderson, J.) similarly concluded that estimates of the likely number of disabled persons affected by access barriers in seventy of the defendant's theaters was sufficient to establish numerosity.

Defendant's reliance upon *Celano v. Marriott Intern., Inc.*, 242 F.R.D. 544, 548 (N.D.Cal.2007) (Hamilton, J.) is misplaced. The district court in *Celano* held that the plaintiffs had not satisfied the numerosity requirement because they had not established how many putative class members "actually had attempted to access one of [plaintiff's facilities] and could not do so because of the lack of accessible" auxiliary aides. *Id.* at 549. In the instant action, plaintiffs have submitted declarations establishing that putative class members have tried to access in-store information on Target.com and could not. Additionally, the statistical evidence submitted here does not suffer from the same defects as that in *Celano*. That court distinguished the unspecific and insufficient statistical evidence provided from that in *Arnold. Id.* Like the data in *Arnold*, the statistics presented by plaintiffs establish that many blind people currently shop at Target and that the type of activity, shopping at a Target store, is sufficiently "widespread", "numerous" and "readily available" that the use of statistics regarding the number of blind shoppers at Target is not "rank speculation untethered to real facts." *Id.* at 449–50. Plaintiffs have submitted sufficient evidence to demonstrate numerosity, and the court declines defendant's request for more granularity.

### B. *Commonality*

■ To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole. Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir.1964). Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). To the extent that the parties' commonality arguments overlap with the merits, the court has evaluated all relevant evidence to determine whether commonality has been established.

Plaintiffs, like those in *Arnold*, bring challenges to common design features of Target.com on the basis of "common distinguishing characteristics shared by all the class members," in this case, their status as blind or visually impaired individuals. 158 F.R.D. at 452. The common questions of law presented here include whether the ADA covers websites as a service for a place of accommodation, which parts of the Target.com website are covered by the ADA, and whether Target has satisfied its obligations under the relevant statutes by accommodating access including, but not limited to, providing a customer service telephone number. The questions of fact common to all class members include whether the website is linked to Target stores, what specific accommodations (e.g., alt-tags, keyboard functionality, headings) are available on Target.com, and whether the post-filing improvements have satisfied Target's statutory obligations. Defendants present no arguments to suggest that plaintiffs have not satisfied the commonality requirement.

In sum, plaintiffs have demonstrated to the court that there are common issues of fact and theories of law as to accessibility of the Target.com website. Therefore, the court finds that plaintiffs have satisfied the commonality requirement.

## C. Typicality

■ Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class. To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. *See Hanlon,* 150 F.3d at 1020. Rather, the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

The gravamen of Target's argument is that the named plaintiff, Sexton, has not demonstrated a legally cognizable injury and, therefore, his claims are not typical of those belonging to the class. Specifically, they contend that Sexton's declaration—nor that of any of the putative class members—has not demonstrated an injury with sufficient nexus to the Target stores. As discussed below, the court is not convinced that Sexton has demonstrated an injury with the requisite nexus to the Target stores for the nationwide class. However, the court is satisfied that some of the putative class members would present the same type of legal and remedial theory as the unnamed class members. As long as the proposed class satisfies the requirements of Rule 23, the court may certify the class conditioned upon the substitution of another named plaintiff. *See Kremens v. Bartley,* 431 U.S. 119, 135, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) (where named plaintiffs' claims were determined to be moot, ordering substitution of class representa-

tives); *Gibson v. Local 40,* 543 F.2d 1259, 1263 (9th Cir.1976) ("In any event, failure of proof as to the named plaintiffs would not bar maintenance of the class action or entry of judgment awarding relief to the members of the class."). Thus, the court will grant plaintiffs' leave to substitute another class representative for the nationwide class.

Target also attacks the proposed class on the basis that the class members' claims are widely divergent, depending on the members' different skill levels with the internet; the type of technology they use; and which parts of the website they attempted to access. These arguments are unavailing. "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes v. Wal–Mart, Inc.,* 474 F.3d 1214, 1232 (9th Cir.2007). In most cases involving access under the ADA, there will be individual variations among class members in terms of the nature of their disability, the types of aides used, and the individual nature of each class member's encounters with the website and access to services and facilities. *See, e.g., Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 611 (N.D.Cal.2004) (finding typicality satisfied where proposed class used different types of mobility aides but experienced the same "effect of these alleged barriers and policies").

## D. Adequacy of Representation

Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the interests of the class. To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them. *See Hanlon,* 150 F.3d at 1020 (citing *Hansberry v. Lee,* 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). "Resolution of two questions

determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Defendant attacks the adequacy of the representation by reiterating the same theory: that Sexton has not provided proof of a legally cognizable injury. Having addressed that elsewhere, the court need not revisit that argument here. Plaintiffs and their counsel appear to have no conflicts of interest with the members of the class. Moreover, it is clear that plaintiffs' counsel is highly competent and defendant does not dispute this. Therefore, the court concludes that plaintiffs have satisfied the adequacy of representation requirement.

### E. *Rule 23(b)(2) Requirements*

In addition to meeting the conditions imposed by Rule 23(a), a party seeking certification of a class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief appropriate. Fed.R.Civ.P. 23(b)(2). Class actions certified under Rule 23(b)(2) are "not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages" where the claim for injunctive relief is the primary claim. *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir.1986). Rule 23(b)(2) certification of a class seeking both injunctive relief and damages is proper only where the claim for injunctive relief is the predominant form of relief sought by the class. The court addresses these requirements below.

■ For the purposes of Rule 23(b)(2), plaintiffs have sufficiently established that Target's actions with respect to the accessibility of its website are "generally applicable to the class." Fed. R. Civ. Proc. 23(b)(2). Target's expert, Dr. Thatcher, explained in his report that "[a]s of April 12, 2006 the website of Target Corporation is virtually unusable by a visitor who is blind." Thatcher Dec. ¶ 60, Pls.' Exh. D. Target has made accessibility improvements to its website more recently. *See* Nemoir Dep. at 21:18–22:5. Nonetheless, putative class members state that they have experienced difficulties accessing the website as recently as June 2007. *See e.g.*, Jacobs Dep. at 44–45. The parties agree that these barriers, to the extent that they still exist, impact all blind users who rely on reader software.[3] While the class definition as modified may include both blind individuals who use reader software and those who do not, the court is satisfied that the website accessibility barriers identified by plaintiffs are generally applicable to the class.

The second of the Rule 23(b)(2) requirements, the predominance inquiry, affects only the California subclass. Here, plaintiffs seek statutory damages only for the California state law claims on behalf of the putative California subclass. The nationwide class seeks only declaratory and injunctive relief, thus satisfying the predominance requirement. Target ar-

---

**3.** Plaintiffs contend that Target's witnesses, Nemoir and Perry, acknowledge that the accessibility barriers on Target.com are generally applicable to the class. *See* Pl's Mot. at 17. However, a review of the deposition testimony of these two witnesses indicates that both acknowledge only that alt-tags are necessary for people using JAWS or other reader software. Perry Dep. at 22:17–26:7; Nemoir Dep. at 85:15–24. Nemoir further acknowledged that keyboard navigation is generally necessary for blind users who use screen access software. Nemoir Dep. at 154:10–155:9.

gues that the statutory damages sought by the California subclass predominate over their request for equitable relief; indeed, it asserts that the damages are the very "*raison de etre* of this subclass." Def.'s Opp. at 20. In divining the intent of the plaintiffs, Target emphasizes the recent changes to the website and statements made by NFB members that the changes render the site accessible. Because Target.com is now more accessible, Target argues that equitable relief will accomplish little more and, therefore, the damages claims predominate. While some anticipation of plaintiffs' intent is appropriate under Rule 23(b)(2), *see Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003) (focusing on the plaintiff's intent for purposes of the predominance inquiry), Target's heavy focus on damages, and hence intent, is misplaced. The nature of the equitable relief is likely to be different and more expansive given the court's holding on the state law claims. Also, plaintiffs' own declarations and those of putative class members indicate that the major form of relief sought is equitable. *See, e.g.,* Clegg Dec. ¶ 21; Sexton Apr. 12, 2006 Dec. ¶ 37 (describing impact on Sexton from not being able to access the website). Moreover, as noted previously, the changes made to the website have not addressed all of plaintiffs' claims. Accordingly, reliance on the court's order in *Leiber* is inapposite. Paradis Dec., Exh. R. Here, the issues requiring equitable relief have not been resolved to the same degree, if at all, and will need to be treated differently from the federal claims.

Next, Target attempts to persuade the court that the damages claims require individualized inquires too complex for certification of a(b)(2) subclass. However, plaintiffs seek the minimum statutory damages, a fixed amount per offense. As the court noted in a similar case seeking both injunctive relief and statutory damages, indi-vidual-specific claims for statutory damages, such as those requested here, are routine in employment discrimination cases. *Arnold,* 158 F.R.D. at 453 (considering class certification in action for statutory damages and equitable relief for alleged violations of the ADA, California Disabled Persons Act, and the Unruh Civil Rights Act). In *Arnold* as here, the relatively minor complexity of these damage claims should not defeat certification under Rule 23(b)(2).

Therefore, certification of the nationwide class and the California subclass is proper under Rule 23(b)(2).

### III. *Motion for appointment of class counsel*

Federal Rule 23(g) requires the court to appoint plaintiffs' counsel in a class action. Fed.R.Civ.P. 23(g). The court is confident in the collective and individual abilities of Mr. Paradis, Mr. Konecky, Dr. Blanck, and Mr. Goldstein to fairly and adequately represent the class. Together counsel have decades of class action and disability rights experience and adequate resources to pursue an action of this nature. *See, e.g.,* Paradis Dec. ¶¶ 2–6; Konecky Dec. ¶¶ 1–6.

Accordingly, the court grants plaintiffs' motion for appointment of lead counsel.

### IV. *Motion for Summary Judgment*

Shortly after plaintiffs filed their motion for class certification, Target filed a motion for summary judgment arguing that plaintiff Sexton had suffered no legally cognizable injury. Specifically, Target argues that Sexton had failed to meet the nexus requirement for the purposes of his ADA claim. Because his state law claims were dependent on his ADA claim, those too must fail according to Target.

### A. *ADA claim*

 The court agrees that Sexton has not demonstrated that his inability to access Target.com renders him unable to access the goods and services of Target stores. Sexton has submitted at least four declarations over the course of this litigation. *See* App. of Supp. Dec., Exh. 14 (compiling declarations). His most recent one, submitted May 25, 2007, describes how Sexton frequently pre-shops on several stores' websites before shopping. Sexton May 25, 2007 Dec. ¶ 4. It further describes the cost and time incurred when he is unable to pre-shop. *Id.* ¶ 5. However, Sexton's declarations do not establish how his difficulties with the Target.com website have impeded his access to the goods and services in the store. He states only that he has been "unable to use Target.com for th[e] purpose" of pre-shopping and that he has been unable to use the weekly advertisements on Target.com for use in the stores. *Id.* ¶ 6–7. The only specific incident described in his declarations involves his purchase of towels for his dorm room. Sexton Apr. 12 2006 Dec. ¶ 33. While he was unable to access information about the towels online, he was ultimately successful in purchasing them in the store after hiring a driver and coordinating a trip with a companion. *Id.* While Sexton's experience may qualify under the class definition if he incurred increased expense and time from the inability to access the website, nonetheless his declaration does not suggest that hiring the driver and arranging for the companion were necessary only because he could not pre-shop. Accordingly, the court will grant defendant's motion for summary judgment on Sexton's ADA claim, but allow substitution of another plaintiff or plaintiffs on this claim.[4]

### B. *State law claims*

While Target contends that plaintiffs' state law claims rest entirely on their ADA claims, plaintiffs have stated independent bases for their claims under the Unruh Act and the DPA. *See* FAC ¶¶ 42, 50. Therefore, Sexton's failure to meet the nexus requirement does not necessarily defeat his state law claims. Having determined that the DPA and the Unruh Act apply to Target. com without a nexus requirement, Sexton's state law claims may survive.

#### 1. *Unruh Act*

The Unruh Act, California Civil Code section 51, *et seq.* provides in relevant part:

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

(d) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall anything in this section be

---

4. Anticipating that plaintiffs may attempt another declaration by Mr. Sexton, the court instructs that this avenue has been exhausted and it will not entertain any further declarations from Mr. Sexton or other plaintiffs. Plaintiffs may substitute another named plaintiff who does not have the shortcomings of Mr. Sexton as described above and set forth in the amended complaint the basis on which the newly named plaintiff satisfies the standing requirements.

construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

With respect to the Unruh Act claim, Target notes that there are only a few contexts in which an Unruh Act claim can exist independent of an ADA claim. It contends that the facts presented here are not one of those contexts. *Compare Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042,1047 (9th Cir.2000) (holding that insurance policy that discriminated against the disabled did not violate the ADA but did independently violate the Unruh Act) *with Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir.2007) ("In the disability context, California's Unruh Civil Rights Act operates virtually identically to the ADA."). The distinguishing factor, according to Target, is that an independent cause of action under the Unruh Act involves a discriminatory policy. That argument is easily set aside. Nothing in the text of the Unruh Act suggests that a discriminatory policy is required for a claim independent of an ADA claim, nor does Target cite any case law to support that position.

Target notes that section 51(c) limits Unruh Act claims to those that do not require any "modification or alterations" beyond that required by other provisions of law. Cal. Civ.Code § 51(c). It is premature, at this stage, to determine whether the ADA or the DPA would require modifications of the Target.com website. The court sees no reason why the Unruh Act's reference to other provisions of law would not refer to either the ADA or the state statute. *Id.* Moreover, plaintiffs argue that the modification language refers to physical modification or construction and, therefore, would not restrict remedies

in the instant action, which require only modification of a website.

Second, Target argues that Sexton has failed to make the requisite intent showing. *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991) ("[T]he language and history of the Unruh Act indicate that the legislative object was to prohibit intentional discrimination in access to public accommodations."). Under Ninth Circuit law, intentional discrimination is not required for an Unruh Act claim predicated on an ADA claim. *See Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837, 846–47 (9th Cir.2004) ("We find that, regardless of whether Harris may continue to have relevance to other Unruh Act suits, no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation."). Having determined that Sexton has failed to establish his ADA claims, *Lentini* does not absolve him of his duty to prove intent for his independent claim under the Unruh Act.

Whether intent is required for an independent disability claim under the Unruh Act has not been addressed by the Ninth Circuit. *Harris* held that disparate impact theories for gender discrimination were not actionable under the Unruh Act. 52 Cal.3d at 1175, 278 Cal.Rptr. 614, 805 P.2d 873. However, the legislative history of the Act and its subsequent construction tilts in favor of plaintiffs' preferred reading. The 1992 amendments to the Unruh Act included a provision to make a violation of the ADA a per se violation of the Unruh Act. In doing so, the legislature noted its intent "to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990, and to retain California law when it provides more protection for individuals with disabilities...." 1992 Cal. Stats. 4282. This statement of legislative intent, issued

after *Harris*, suggests that *Harris'* proclamations on the legislature's intent may no longer be applicable, particularly in disability cases. *But see Gunther v. Lin,* 144 Cal.App.4th 223, 50 Cal.Rptr.3d 317 (2006) (relying on *Harris* to conclude that a plaintiff must prove intent for a damages claim, but not for injunctive relief, under the Unruh Act).

Plaintiffs argue that the unique nature of discrimination on the basis of disability makes the reasoning in *Harris* inapposite. Disability discrimination, they contend, is characterized by inaction and the appropriate remedy for this type of discrimination is modification of otherwise neutral policies or practices. *Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F.Supp.2d 1134, 1136 (N.D.Cal.1998) (Henderson, J.) ("[D]iscrimination against persons with disabilities differs from discrimination on the basis of, for example, gender, or race. Discrimination in the latter instances has been judicially defined as disparate treatment on the basis of a certain characteristic that identifies an individual as a member of a protected class. However, a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed accommodation."). The ADA thus departs from other anti-discrimination statutes in requiring that places of public accommodation take affirmative steps to accommodate the disabled. H.R. Rep. No. 101–485, pt.2, at 104 (1990); 42 U.S.C. § 12182(b)(2) (A) (ii-iv). The court is not persuaded that the California Court of Appeals properly acknowledged the unique nature of disability discrimination in applying *Harris* to disability claims for damages. *Gunther,* 144 Cal.App.4th at 223, 50 Cal.Rptr.3d 317. At least one other district court has reached this conclusion. *See Wilson v. Haria and Gogri Corp.,* 479 F.Supp.2d 1127, 1141 (E.D.Cal.

2007) (rejecting *Gunther* where Unruh claim depended on violations of the ADA).

Plaintiffs have alleged intentional discrimination in their complaint. FAC ¶ 41. Target argues that they have not established intent nor can they for four reasons: 1) Target did not engage in any discriminatory personal contact with Sexton; 2) Target has not engaged in any willful, affirmative misconduct; 3) Discriminatory intent cannot be inferred from the effect on the class; 4) Discriminatory intent cannot be inferred from Target's refusal to modify its website. Plaintiffs, in their supplementary brief on state law issues, set out their evidentiary proffer of intent for a later stage of litigation, namely that Target's knowing failure and refusal to adopt certain accessibility features in Target.com constitute the requisite intent. They cite *Hankins v. El Torito Restaurants, Inc.,* 63 Cal.App.4th 510, 518, 74 Cal.Rptr.2d 684 (1998) for the proposition that such a knowing failure establishes the requisite intent. That case is far from clear on the nature of the intent showing required by the Unruh Act.

### 2. *DPA*

The DPA provides in relevant part:

§ 54(a) Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places.

. . .

(c) A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) also constitutes a violation of this section.

§ 54.1(a) (1) Individuals with disabilities shall be entitled to full and equal access,

as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

. . .

(3) "Full and equal access," for purposes of this section in its application to transportation, means access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards.

Cal. Civ.Code § 54 *et seq.*

Target argues that Sexton's DPA claim must fail because the DPA requires an ADA violation or a building code violation. Under this view, because Sexton has not suffered an injury under the ADA and has provided no evidence of a building code violation, his DPA claim must also fail. Target relies on two cases for the proposition that the DPA requires a violation of the ADA or a building code violation. The first, *Mannick v. Kaiser Foundation Health Plan, Inc.,* No. 03–5905, 2006 WL 2168877, at *16 (N.D.Cal. July 31, 2006) (Hamilton, J.), involved a DPA claim that was based solely on the plaintiff's claims under the ADA. Here, plaintiffs have alleged an independent DPA claim from the alleged ADA violations. Like *Mannick,* the second case, *Arnold v. United Artists Theatre Cir., Inc.,* also involved building code violations and thus the court referred to those as the appropriate state law for the purposes of determining what "full and equal access" meant in that context. *See* Cal Civ.Code § 54.1(a)(3) ("Full and equal access," for purposes of this section in its application to transportation, means access that meets the standards [of the ADA] . . . except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards.). Nothing in the language of the DPA suggests that it is limited to building code violations; rather the statutory language refers to the higher standards of state law. *Id.* In *Arnold* and in *Mannick,* the relevant higher standard of state law was the building code because the disputes concerned building accessibility.[5] Here, if state law requires higher standards of website accessibility than the ADA, those standards are the relevant ones for the purposes of the DPA. Accordingly, the applicable standards of "full and equal access" under state law is still an open question. The court declines to adopt Target's cramped reading of the DPA.

## V. *Motion to Strike*

Target filed a motion to strike portions of the March 29, 2007 declaration of Anne

---

**5.** Target also cites to *Urhausen v. Longs Drug Stores of Ca., Inc.,* 155 Cal.App.4th 254, 65 Cal.Rptr.3d 838 (2007). *Urhausen,* however, provides further support for the court's holding since it defines "full and equal access" as access that complies with the ADA, or com-

plies with state statutes, if the latter impose a higher standard. *Id.* at 155 Cal.App.4th at *260, 65 Cal.Rptr.3d at 842. Specifically, the court declines to limit the definition of access "only to entry into a building." *Id.*

Taylor submitted in support of plaintiffs' reply. Target bases its motion on grounds that the testimony is speculative, that the declarant lacks personal knowledge, and that the testimony lacks foundation. In particular, defendant objects to Taylor's statements regarding the likelihood of blind and visually impaired people using screen access software to visit the website. Taylor Mar. 29, 2007 Dec. ¶ 5. To be admissible, this statement, Target argues, requires Taylor to be qualified as an expert. Additionally, they are not based on Taylor's personal knowledge. Plaintiffs contend that Taylor is qualified to attest to the statements in her declaration based on her experience in the field of access to technology by the blind. *See* Taylor May 8, 2006 Dec. ¶ 2. Taylor appears to have knowledge in this field, although without properly qualifying her as an expert, her testimony is inadmissible. Taylor does not have personal knowledge, according to Federal Rule of Evidence 602, of the incidence and usage of all blind and visually impaired people using the website. While there may be a somewhat relaxed standard for the use of expert testimony at class certification, the lenience of the standard does not apply to qualification as an expert but to the probative value of her conclusions. *Dukes v. Wal–Mart, Inc.*, 222 F.R.D. 189, 191 (N.D.Cal.2004) (Jenkins, J.); *see also In re Polypropylene Carpet Antitrust Litigation*, 996 F.Supp. 18, 26 (N.D.Ga.1997) (at class certification stage court only examined whether the expert's methodology will (a) comport with basic principles, (b) have any probative value, and (c) primarily use evidence that is common to all members of the proposed class). The court has no information about Taylor's methodology or basis for her conclusion. Accordingly, her declaration has not met even the lower *Daubert* standard applicable at this stage.

Target further objects to Taylor's statements about the number of blind and visually impaired people who would likely visit Target.com if it were fully and equally accessible. Again, Target argues that this statement is speculative and without foundation. In defense of Taylor's declaration, plaintiffs raise her extensive experience and point to the underlying data on which Taylor relied to reach this conclusion. Her forecasts about the incidence of blind and visually impaired visitors to a fully accessible site suffer from the same flaws as the previous statement: she lacks personal knowledge and has not sufficiently laid the foundation for her conclusions.

Accordingly, Target's motion to strike the disputed portions of the Taylor declaration is GRANTED.

## VI. Motion for Bifurcation

Plaintiffs ask the court to bifurcate the issues at trial into two stages. Phase I would address the liability to the class as well as declaratory and injunctive relief. If Target is found liable at the first stage, then phase II would address damages for the class members, likely in the form of claims process or hearings before a special master. Pursuant to Federal Rule of Civil Procedure 42(b), the court has discretion to order a separate trial of any issue or claim where it is convenient and not prejudicial. *Id.; see also Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985). Defendant contends that plaintiffs' bifurcation proposal attempts to import burden-shifting principles from the employment discrimination context to the instant action. *See International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 360–61, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Unlike a damages phase in an employment discrimination action, a proposed damages phase in the instant action would not require burden-shifting; nor do plaintiffs ap-

pear to seek such a framework in their proposal. Rather, a finding of liability in phase I—namely that Target.com was impermissibly inaccessible to blind users—would require at phase II proof only that a particular user was blind and that he or she encountered a particular barrier on the website.

■ Because neither party has requested a jury trial, the relevant considerations for bifurcation are complexity, disposition of the issues, and the likelihood of prejudice to the parties. *See, e.g., Arnold,* 158 F.R.D. at 459. The complexity of the legal and factual issues associated with the proposed liability stage in addition to those associated with individual determinations of damages weighs in favor of bifurcation. In particular, the court must determine what the statutory requirement of full and equal access means in the context of reviewing a website and its nexus to the Target stores. It must evaluate whether the various parts of Target.com met that standard and the appropriate form of equitable relief, if any. These issues are distinct from the inquiries related to damages determinations and separating the issues will aid in their determination. Target objects that plaintiffs' proposal alters the burden of proof and presumes liability, thereby prejudicing Target. Having rejected this argument, the court concludes that bifurcation is appropriate.

*CONCLUSION*

Based upon the foregoing, IT IS HEREBY ORDERED that:

1) Plaintiffs' motion to certify a class is GRANTED.

2) The nationwide class consists of all legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores. The Cali-

fornia subclass includes all legally blind individuals in California who have attempted to access Target.com, for plaintiffs' claims arising under the California Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.* and the Disabled Persons Act, California Civil Code §§ 54 *et seq.*

3) Plaintiffs are ordered to substitute a new class representative with respect to the ADA claims consistent with this order within thirty (30) days of the date of this order.

4) The counsel of named plaintiff shall serve as counsel for the class.

5) Defendant's motion to strike Taylor's supplementary declaration is GRANTED.

6) Plaintiffs' motion for bifurcation of trial is GRANTED.

7) Defendant's motion for summary judgment is DENIED subject to the provisions of this order.

IT IS FURTHER ORDERED that counsel shall confer and submit a proposed class notice in compliance with this order within thirty (30) days of the date of this order. Within thirty (30) days, counsel shall also set forth a class commencement date that is to be included in the definition of the class.